UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

LISA L. LAMBERT,

    Debtor.

Case No. 04-30394
Chapter 7

JEANNE K. LEE,

    Plaintiff,

v.

LISA L. LAMBERT,

    Defendant.

Adv. Pro. 05-03041

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on October 23, 2006. Plaintiff Jeannie K. Lee ("Lee") was present in person and by counsel Sherrie L. Phillips. Defendant Lisa L. Lambert[1] ("McIlwain") was present in person and by counsel Collier H. Espy, Jr. Lee contends that McIlwain is indebted to her in the approximate amount of $900,000, and that this indebtedness is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2), (4) or (6). For the reasons set forth below, the Court determines that the indebtedness is not excepted from McIlwain's discharge. In other words, McIlwain's indebtedness to Lee has been discharged. Accordingly, the Plaintiff's complaint is DISMISSED.

---

[1] Defendant Lisa L. Lambert has married since she filed her petition in bankruptcy. As she now uses her married name, Lisa McIlwain, she will be referred to as McIlwain.

## I. FACTS

McIlwain filed a petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on February 12, 2004. (Case No. 04-30394, Doc. 1). The case was converted to a case under Chapter 7 on March 3, 2005. (Case No. 04-30394, Doc. 274). On June 30, 2005, this Court awarded McIlwain a discharge in accordance with 11 U.S.C. § 727. (Case No. 04-30394, Doc. 329). On June 7, 2005, Lee filed a timely complaint seeking a determination that the indebtedness owed her by McIlwain is excepted from the discharge. (Doc. 1).

Lee and McIlwain are mother and daughter. Apparently, they were quite close at one time, but the relationship has definitely soured in recent years. Lee did not attempt a precise accounting at trial, but it is undisputed that substantial sums of money were advanced by Lee to McIlwain. Given the Court's disposition of this Adversary Proceeding, it is not necessary to make a precise determination, but for purposes of discussion, the Court will ballpark the amount advanced at $900,000.

Lee advances two contentions in support of her claims. First, she contends that McIlwain defrauded her in that McIlwain promised, but willfully failed, to record a mortgage dated September 29, 2000, in the principal amount of $600,000.00. (Pl.'s Ex. 3 ). Second, Lee contends that McIlwain forged her signature on a Release of Mortgage. (Pl.'s Ex. 10).

Lee testified that McIlwain promised to record the September 29, 2000 Mortgage. It is undisputed that the Mortgage was not recorded. McIlwain denied in her testimony that she had promised Lee that she would record the mortgage. She further testified that Lee intentionally failed to record the mortgage, because she was not reporting her interest income to the Internal Revenue Service on her tax return. McIlwain offered a copy of Lee's 2001 Federal Income Tax

Return into evidence. (Def.'s Ex. 3). The tax return reports only $840.00 in interest income, none of which is identified as having been received from McIlwain. Moreover, McIlwain offered evidence showing that she paid Lee tens of thousands of dollars in interest on the various indebtedness during the year 2001. (Def.'s Exs. 1, 1-A, 2, 2-A, 2-B, 2-C). The Court would further note that Lee had sold a number of businesses and business properties in recent years for approximately $4 million. While Lee is apparently quite wealthy, she reported total a income on her 2001 tax return of only $8,167.00, which would appear to be inconsistent with her lifestyle and status.

Lee called Robert Straub, an attorney from Decatur, Alabama who had represented Lee in the past, as a witness on her behalf. Straub did not represent Lee in the transaction involving the September 29, 2000 mortgage. Rather, Straub testified that he was consulted by Lee later, after the mortgage was executed. He further testified that the mortgage should have been recorded in the county in which the property was located, but he had not seen a recorded mortgage. Given Straub's warning, Lee's failure to cause the mortgage to be recorded is inexplicable. The Court, having heard Straub's testimony, finds that it does not support Lee's contention that McIlwain had promised to record the mortgage.

McIlwain need not prove her mother guilty of income tax evasion to prevail in this Adversary Proceeding; however, the Court finds that her theory that the mortgage in question was not recorded in furtherance of Lee's scheme to defraud the Government out of its taxes is plausible. The Court has carefully examined the documentary evidence and heard oral testimony from both Lee and McIlwain. Based on this evidence, the Court finds Lee's credibility lacking. The Court further finds that McIlwain did not promise Lee that she would record the mortgage.

-3-

Lee further contends that McIlwain forged her signature on a Release of Mortgage.[2] (Pl.'s Ex. 10). Lee offered sworn testimony that she did not sign the release. McIlwain testified that the Release was signed by Lee. Moreover, McIlwain called Marilyn Armstrong, the Notary Public who executed the Acknowledgment, who testified that she witnessed Lee sign the Release. Having heard the testimony of the witnesses and having had the opportunity to observe their demeanor, the Court finds that the Release was signed by Lee.

## II. CONCLUSIONS OF LAW

This is an Adversary Proceeding to determine whether an indebtedness is excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). This Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

### A. Section 523(a)(2) Fraud

Section 523(a)(2) of the Bankruptcy Code provides, in part, as follows:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> * * *
> (2) for money, property, services . . . to the extent obtained, by–
>    (A) false pretenses, a false representation, or actual fraud.

11 U.S.C. § 523(a)(2).

To prevail on a claim for a determination that a debt is excepted from discharge for fraud, pursuant to 11 U.S.C. § 523(a)(2), the Plaintiff must prove:

---

[2] The Release of Mortgage is unrelated to the Mortgage discussed above. In other words, Lee held several mortgages on McIlwain's property, one of which was not recorded.

-4-

(1) The debtor made a false representation or a past or current material fact;

(2) With the intent to deceive the creditor;

(3) The creditor justifiable relied upon the representation; and

(4) The creditor sustained a loss as a proximate result of the representation.

St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 676 (11th Cir. 1993); Capital Chevrolet v. Bullock (In re Bullock), 317 B.R. 885, 888-89 (Bankr. M.D. Ala. 2004); Overly v. Guthrie (In re Guthrie), 265 B.R. 253, 258 (Bankr. M.D. Ala. 2001); see also, Field v. Mans, 516 U.S. 59, 61, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995) (holding that "justifiable reliance" was the appropriate standard rather than the more stringent "reasonable reliance" standard); Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) (holding that preponderance of the evidence is the proper burden of proof in actions for nondischargeability).

In the case at bar, the Court finds that McIlwain did not make a false statement to the effect that she would record the mortgage in question. In addition, the Court finds that McIlwain did not forge her mother's signature on the Release of Mortgage. For these reasons, Lee's claims fail for her inability to prove that McIlwain made a false statement.

### B. Section 523(a)(4) Fraud or Defalcation in a Fiduciary Capacity

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). There is a considerable body of case law on the question of who is a fiduciary and what constitutes a defalcation. See, e.g., Jordan v. Frick (In re Frick), 207 B.R. 731, 735 (Bankr. N.D. Fla. 1997) (holding that the plaintiff must prove the existence of an actual or technical trust). In the case at bar, there is a complete failure of evidence on the existence of an actual or technical trust. Moreover, there is

-5-

no evidence of fraud or defalcation. For these reasons, the Court finds that Lee's section 523(a)(4) claim is without merit.

### C. Section 523(a)(6) Willful and Malicious Injury

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." It is well established that one must prove that the debtor intended the injury and not just the act that results in the injury. Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); Farris v. Ciuzio (In re Ciuzio), 234 B.R. 822 (Bankr. M.D. Ala. 1999). To be sure, McIlwain failed to repay to Lee a considerable amount of money which she had borrowed. However, the failure to repay a debt in and of itself does not in any way constitutes a willful and malicious injury. Therefore, the Court finds that Lee's section 523(a)(6) claim fails.

### III. CONCLUSION

Plaintiff Jeanne K. Lee has failed to prove that Lisa McIlwain promised to record a mortgage, and she has also failed to prove that McIlwain forged a Release of Mortgage. If follows then that Lee's claims that the indebtedness owed by McIlwain be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2), (4) or (6) are without merit. The Court will, by way of a separate document, enter a dismissal of Lee's complaint with prejudice.

Done this the 18th day of December, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge